UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JUSTIN DEAN COFER,                    )
                                      )
        *Plaintiff*,                  )
                                      )
v.                                    )        No. 3:23-cv-00045-SKL
                                      )
COMMISSIONER OF SOCIAL SECURITY,      )
                                      )
        *Defendant*.                  )

## MEMORANDUM AND ORDER

Plaintiff Justin Dean Cofer, ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying him disability insurance benefits ("DIB"). Each party has filed a brief seeking judgment in their favor pursuant to the Federal Rules of Civil Procedure Supplemental Rules for Social Security [Doc. 13, Doc. 14, & Doc. 18].[1] Plaintiff also filed a reply brief pursuant to Rule 8 of the Supplemental Rules [Doc. 19]. For the reasons stated below: (1) Plaintiff's request for relief [Doc. 13 & Doc. 14] will be **DENIED**, and (2) the Commissioner's request that her final decision denying benefits be affirmed [Doc. 18] will be **GRANTED**.

## I.    ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 6 ("Tr.")], Plaintiff filed his application for DIB on July 15, 2021, alleging disability beginning February 9, 2021. Plaintiff's claim was denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an

---

[1] Plaintiff's filings are styled as a motion for summary judgment with a supporting memorandum, consistent with the practice prior to the effective date of the new Supplemental Rules.

administrative law judge ("ALJ"), which was held via videoconference on October 11, 2022. On October 21, 2022, the ALJ found Plaintiff was not under a disability at any time from the alleged onset date through the date of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.[2]

## II.    FACTUAL BACKGROUND

### A.    Education and Employment Background

Plaintiff was born on December 16, 1979, making him 41 years old on the alleged disability onset date, which is considered a "younger individual." 20 C.F.R. § 404.1563(c). He has at least a high school education and is able to communicate in English. He has past relevant work as a recreation leader and a retail manager. Both of these occupations are performed at the medium exertional level and are classified in the DOT[3] as skilled.

### B.    Medical Records

In his July 2021 Adult Disability Report, Plaintiff alleged disability due to tinnitus, hearing loss, hepatitis C, anxiety, depression, panic disorder, PTSD, back and neck pain, diabetes, allergic rhinitis, high cholesterol, blood pressure issues, and urinary issues (Tr. 255). While there is no need to summarize all the medical records herein, the relevant records have been reviewed.

### C.    Hearing Testimony

At the video conference hearing held October 11, 2022, Plaintiff and a vocational expert

---

[2] The October 21 decision briefly mentions a claim for DIB benefits Plaintiff filed on March 30, 2009, which the record reflects was denied and eventually dismissed after Plaintiff withdrew his request for an administrative hearing (Tr. 10, Tr. 68).

[3] Dictionary of Occupational Titles

2

("VE") testified. Plaintiff was represented by counsel at the hearing. The Court has reviewed the transcripts of the hearing (Tr. 40-65).

## III.    ELIGIBILITY AND THE ALJ'S FINDINGS

### A.    Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

3

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of their impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant can perform. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

**B.      The ALJ's Findings**

The ALJ found Plaintiff met the insured status requirements through December 31, 2026. At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of February 9, 2021. At step two, the ALJ found Plaintiff had the following severe impairments: (1) PTSD, (2) anxiety/agoraphobia disorder, (3) depressive/bipolar disorder, (4) diabetes mellitus, and (5) obesity. The ALJ noted Plaintiff had several additional impairments and conditions, but the ALJ found these conditions/impairments were either not medically determinable, did not meet the 12-month durational requirement, or were otherwise not severe (Tr. 13-14). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations/qualifications:

- He can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently.

4

- With normal breaks, he can sit for up to six hours.

- With normal breaks, he can stand and walk for up to six hours.

- He can understand, remember, and complete simple and detailed instructions.

- He can concentrate and persist on tasks for at least two hours at a time.

- He can acceptably interact with coworkers and supervisors on an occasional basis after the initial training period.

- He should have no direct contact with the public, although incidental contact with the public can be tolerated.

- He can adapt to occasional changes in a routine work setting.

(Tr. 15). At step four, the ALJ found Plaintiff was unable to perform his past relevant work. At step five, however, the ALJ found there were other occupations with jobs existing in substantial numbers in the national economy available to a person with Plaintiff's RFC, including routing clerk, housekeeper, and price marker.

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between his alleged onset date of February 9, 2021, and the date of the ALJ's decision, October 21, 2022.

IV.    ANALYSIS

Plaintiff argues the ALJ's decision should be reversed and remanded for an award of benefits or in the alternative, for further administrative proceedings. He argues the ALJ's "findings and decision are not supported by the substantial evidence in the record." [Doc. 13 at Page ID # 1498; Doc. 14 at Page ID # 1506]. He asserts: "In their decision, the ALJ claimed that the Plaintiff's limitations were not severe and cites to several treatment dates to try and justify their reasoning. But a proper reading of those treatment dates and surrounding dates forces one to come

5

to the opposition conclusion." [Doc. 14 at Page ID # 1506]. Plaintiff implies the ALJ did not properly consider his subjective complaints regarding his symptoms.

### A.    Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

6

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B. Plaintiff's Arguments

As the Commissioner points out, Plaintiff challenges the ALJ's assessment of Plaintiff's mental RFC, including the ALJ's consideration of Plaintiff's medical record and subjective complaints regarding his mental state and ability to perform the mental functions included in the RFC [*see* Doc. 18 at Page ID # 1517 n.1 & n.2]. The Court agrees with the Commissioner that Plaintiff does not challenge the ALJ's step two or three determinations, although Plaintiff at times argues or implies the ALJ found Plaintiff's mental limitations were "not severe" [*see, e.g.*, Doc. 14 at Page ID # 1506; *see also id.* at Page ID # 1509 (Plaintiff's brief, arguing: "No individual is doing fine or only has moderate limitations if they are requiring multiple treatment visits and checkups per month on an ongoing basis.")]. Plaintiff does not challenge the Commissioner's characterization of his argument in his reply brief, nor does Plaintiff mention steps two or three in his briefing or cite to any standards applicable at steps two and three. If Plaintiff is attempting to

7

challenge the ALJ's determination at steps two or three, the Court finds such challenge is not properly developed and thus, fails. *See McGrew v. Duncan*, 937 F.3d 664, 669 (6th Cir. 2019) ("A party may not present a skeletal argument, leaving the court to put flesh on its bones."); *Emerson v. Novartis Pharms. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) ("[J]udges are not like pigs, hunting for truffles[.]" (citation omitted)).

In addition, it is well-settled that a failure to find an impairment severe is harmless error where an ALJ finds other severe impairments and accommodates any limitations arising from the non-severe impairments in the RFC. *See, e.g., Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (Where ALJ considered all impairments in crafting RFC, "[t]he fact that some of Anthony's impairments were not deemed to be severe at step two is . . . legally irrelevant." (citing *Marziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987))).

Plaintiff likewise does not challenge the VE's testimony or the ALJ's identification of occupations at steps four and five, except indirectly, to the extent they are based on the ALJ's allegedly flawed RFC assessment.

As such, the Court's analysis is also limited to the ALJ's consideration of Plaintiff's mental limitations in assessing Plaintiff's RFC.

**C.     The ALJ's Consideration of the Evidence and Assessment of Plaintiff's Mental RFC**

A claimant's RFC is the most the claimant can do despite their impairments.  20 C.F.R. § 404.1545(a)(1).  In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).  An ALJ is responsible for determining a claimant's RFC after

review all of the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Further, Plaintiff has the burden of showing the severity of his conditions and their limiting effect on his ability to perform work functions. *See Watters v. Comm'r of Soc. Sec.*, 530 F. App'x 419, 425 (6th Cir. 2013) ("[T]his court has consistently affirmed that the claimant bears the burden of producing sufficient evidence to show the existence of a disability." (citing *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012)) (other citation omitted)).

The ALJ begins his analysis of Plaintiff's RFC by detailing Plaintiff's testimony during the administrative hearing, assessing Plaintiff's subjective complaints, and then offering the following preliminary explanation/outline of his decision:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the objective findings do not support the alleged work-related limitations. As for the mental impairments, while there is a considerable overlap in combined symptoms between different mental impairments, as well as the inherently subjective nature of mental diagnoses, the claimant's psychological symptoms and their effect on functioning is considered together, instead of separately, regardless of the diagnoses. The claimant does have severe impairments of PTSD, Anxiety/Agoraphobia disorder, and Depressive/Bipolar disorder, but they are not so severe as to be disabling.
>
> The claimant's representative filed a brief, he says a day before the hearing, but it did not appear in our Case Documents until the day after the hearing on September 12, 2022 (Exhibit B20E). Therein, the representative focuses on the claimant's subjective

9

complaints to his Veterans Affairs (VA) treatment providers but failed to show the objective mental status examination results, which were largely normal, with a few exceptions. Nor did he show those times when the claimant told his provider he was either doing okay or doing well. As the representative went into detail with the subjective complaints of the claimant, so I too have gone through the same (Exhibits B1F, B4F and B5F[4]) and show[n] the other side of the story with objective examination results, and those times when the claimant reported he was doing okay.

In addition, the claimant's treatment has been on an outpatient basis with at first only conservative medication management and then psychotherapy was added. There were no hospitalizations or inpatient visits and as said above the objective mental status examinations were usually normal. In addition, the claimant was able to attend online classes at King's College and was looking for work, which assumes that he believes that he can work. The claimant's mental health treatment at the VA[5] is as follows[.]

(Tr. 17 (paragraph breaks added)). The ALJ then proceeds to discuss Plaintiff's medical records in detail, including specifically mentioning records from over two dozen appointments. After thoroughly discussing the medical record, the ALJ addresses opinion evidence. As relevant to the issues at bar, the ALJ found the State agency psychological consultants' opinions persuasive, noting:

With their limiting the claimant to simple and detailed work, I have limited the claimant's understanding and remembering to that level of instructions. The longitudinal mental status examinations consistently supported these limitations (Exhibits B4F/19; B8F/14, 24, 34). Moreover, the claimant reported doing well (Exhibits B1F/500, 530; 5F/72, 87, 209; 8F/9, 14, 24).

(Tr. 25).

---

[4] The Court notes these exhibits include Plaintiff's medical records from the VA spanning from January 2019 through April 2022. In the written decision, the ALJ discusses the records that post-date February 9, 2021, Plaintiff's alleged onset of disability date. The parties' briefs likewise address the medical record beginning after February 9, 2021.

[5] United States Department of Veterans Affairs

10

Finally, the ALJ observed Plaintiff applied for and received unemployment benefits, including during the third quarter of 2021, noting:

> In order to receive unemployment benefits, the claimant must have presented that he was capable of working and going out and seeking employment. While receipt of unemployment benefits does not preclude the receipt of Social Security disability benefits per se, it is only one of many factors that must be considered in determining whether the claimant is disabled (20 CFR 404.1512(b) and 416.912(b)).

(Tr. 26).

Plaintiff argues the ALJ "cherry-picked dates and notes in the record to paint a picture the Plaintiff was actually normal while ignoring the other documentation on the same day or the same month that revealed that the Plaintiff suffered from severe and chronic symptoms and limitations." [Doc. 14 at Page ID # 1509].

It is generally recognized that an ALJ "may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." *Biermaker v. Comm'r of Soc. Sec.*, No. 14-12301, 2016 WL 7985329, at *9 (E.D. Mich. June 13, 2016) (quoting *Smith v. Comm'r of Soc. Sec.*, 2013 WL 943874, at *6 (N.D. Ohio 2013) (other citations omitted)), *report and recommendation adopted,* No. 14-12301, 2016 WL 5027593 (E.D. Mich. Sept. 20, 2016). This "cherry picking" argument is frequently made but seldom successful because "the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (holding "we see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence"); *accord DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (noting that "cherry picking" allegations are seldom successful because crediting them would require courts to

11

re-weigh record evidence). The Sixth Circuit has consistently upheld the discretion vested in ALJs to weigh conflicting record evidence in assessing disability status. *See id*.

Here, Plaintiff has not "persuasively shown that the ALJ erred in conducting [the] difficult task" of weighing the record evidence. *White,* 572 F.3d at 284. As addressed below, the ALJ properly considered and discussed the evidence in the record as a whole and discussed both positive and negative findings.

Plaintiff first takes issue with the following comments by the ALJ:

> On March 2, 2021, the claimant complained of being fired because his employer would not give him mental health accommodations. However, the claimant did not say what kind of mental health accommodations he was asking for. On this date the claimant's mood was euthymic (normal mood, positive).

(Tr. 17). Plaintiff argues:

> Yet just because they were not specifically mentioned in the record does not mean that they were not discussed or that accommodations were not sought by the Plaintiff. Whether noted in detail in the record or not, at the end of the day his mental health limitations caused him to be terminated from his job because he was unable to perform the tasks required of him.

[Doc. 14 at Page ID # 1507].

When read in context, it is clear the ALJ's commentary is part of a discussion regarding Plaintiff's motivation to continue working for the employer who fired him (i.e., to avoid losing his job), given that his household income already exceeded $100,000 per year. The ALJ does not imply Plaintiff misrepresented to his VA providers that he requested a disability-related accommodation or that he was fired. In any event, Plaintiff does not show any harmful error in the ALJ's commentary regarding the March 2, 2021, appointment. Neither the commentary by the ALJ nor Plaintiff's request for accommodations speak to any particular functional limitations

12

that would impact the ALJ's assessment of Plaintiff's RFC. And Plaintiff cites to no authority prohibiting the ALJ from considering information which, as a matter of common sense, reasonably could affect a claimant's motivation to continue working.

Plaintiff then challenges the ALJ's discussion of other March 2021 treatment notes, first taking issue with the ALJ's observation that Plaintiff was "stable" during a March 5, 2021 appointment (Tr. 17). Plaintiff protests that the "follow-up had nothing to do with his psychiatric treatment," rather, it was related to his Covid-19 diagnosis [Doc. 14 at Page ID # 1507]. Nevertheless, the record plainly states Plaintiff was "stable" on March 5 (Tr. 607), and the ALJ was aware of the March 5 Covid-19 diagnosis, as he references it in the same paragraph (Tr. 18). The ALJ does not state or imply that the "stable" notation was related to Plaintiff's mental functioning. Indeed, later in the decision when listing instances in the record where Plaintiff "reported doing well" mentally, the ALJ notably does not list the March 5 appointment record.

Plaintiff then takes issue with the ALJ's discussion of treatment records from later in March 2021. The ALJ found: "On March 30, 2021, the claimant's mood was due to the temporary situational stressors of having just had a positive COVID-19 test on March 5, 2021, and being released from work on February 9, 2021." (Tr. 18). Plaintiff argues "these symptoms were not related to having COVID-19 or just 'temporary situational stressors,'" but rather "anxiety, depression, nightmares, etc. are chronic and longstanding." [Doc. 14 at Page ID # 1507]. The ALJ clearly recognized Plaintiff's chronic mental conditions, including—explicitly—Plaintiff's anxiety and depression. The ALJ also acknowledged Plaintiff's reports regarding "night terrors" (*see, e.g.*, Tr. 20). Moreover, the ALJ's statement concerning the March 30 appointment implicitly acknowledges Plaintiff was experiencing more severe symptoms at that time, which runs contrary to Plaintiff's argument that the ALJ cherry-picked the evidence by only accepting evidence that

13

supported a denial of benefits. And Plaintiff fails to meaningfully address the actual language used in the March 30 record:

> **Psychosocial** issues: Very anxious **since no longer employed**. Will meet with EEOC regarding unfair firing and disregard to disability. He reports increase in high anxiety and ongoing nightmares. Slowly recovering from Covid-19 after infant cont[r]acted at daycare. . . . Worried about future and well being of his family. **Appropriate concerns. He will discuss with provider as more depressed since getting Covid-19**.

(Tr. 602-03 (emphasis added)). The ALJ's interpretation of this record is entirely reasonable.

Plaintiff's next appointment in the record appears to be April 27, 2021. At this time, Plaintiff's providers at the VA found Plaintiff was "friendly, calm, and cooperative," with a "full range in affect," intact concentration, good insight and judgment, and a fully intact memory (Tr. 586), as the ALJ noted (Tr. 18). The ALJ acknowledged Plaintiff's report to his providers that he was experiencing "occasional combat flashbacks," but he nevertheless was "doing well," and "coping well with his meds and keeping busy around his home." (Tr. 18, Tr. 581). Plaintiff essentially glosses over this appointment as well as a May 25, 2021 appointment, when Plaintiff's VA providers made similar observations and findings regarding Plaintiff's mental status (Tr. 18, Tr. 568, Tr. 573).

Plaintiff does, however, take issue with the ALJ's consideration of Plaintiff's records from June 2021. Plaintiff points out that on June 10, 2021, he reported he had been feeling constantly lethargic, he was only sleeping four hours a night, his anxiety had worsened since he lost his job, it was hard for him to leave the house, and his depression had increased (Tr. 547). While it is true the ALJ did not explicitly include these particular details in the written decision, it is clear the ALJ considered the June 10 record and Plaintiff's increased symptoms. The ALJ noted Plaintiff's

14

"increased anxiety and agoraphobia symptoms" in the very next sentence while discussing an appointment on June 14, 2021 (Tr. 18).

Regarding a June 22, 2021, appointment, Plaintiff argues the ALJ erroneously "claimed that the Plaintiff reported to be essentially fine," when in reality Plaintiff's medication was increased and Plaintiff told his providers he would begin attending "coping skills classes." [Doc. 14 at Page ID # 1508; Tr. 510].  However, the ALJ's discussion of the June 22 appointment is limited to the results of Plaintiff's mental status examination, which, as the ALJ notes, were normal (with the exception of "intermittent PTSD flashbacks" and a "bland" mood) (Tr. 18-19).  That is, despite the medication adjustment and introduction of new classes to aid Plaintiff's coping skills, Plaintiff's behavior was friendly, calm, and cooperative, he demonstrated good insight and judgment, and his memory was fully intact (Tr. 515).

The Court need not go through each specific record/appointment/treatment note that Plaintiff cites in his brief and the ALJ's discussion thereof herein.  They have been reviewed and, in general, Plaintiff's position is that the ALJ fails to explicitly acknowledge Plaintiff's reports to his providers—for example that Plaintiff "described significant anxiety and catastrophization when depressed" and "reported significant side effects" from one of his medications in July 2021 (Tr. 483); he "reported that he is attending support groups and classes" in August 2021 [Doc. 14 at Page ID # 1508]; he "spent a week in bed" in September 2021 and "has little memory of that time" (Tr. 1122); he "had previously been doing very well, but has noticed worsening anxiety and other PTSD symptoms in the context of recent psychosocial stressors" in September 2021 (Tr. 1381); and, "[o]ther than three days of being depressed and remaining in his room, he has otherwise been in good spirits," in July 2022 (Tr. 1455).

15

True, at times, the written decision focuses on the mental status examination results. But the ALJ did not ignore or overlook Plaintiff's complaints concerning his mental health or his reports to his VA providers, or other evidence in the record concerning Plaintiff's ability to function. Indeed, the ALJ specifically states: "As the representative went into detail with the subjective complaints of the claimant, so I too have gone through the same and show[n] the other side of the story with objective examination results, and those times when the claimant reported he was doing okay." (Tr. 17). Furthermore, the ALJ does detail Plaintiff's complaints at times (Tr. 19 ("He noted being very anxious about his appointment . . ., but was pleased that he attended."); Tr. 20 ("His mood was 'tired but making it.'"); Tr. 20 ("his mood had gone up and down due to recent events in the mail"); Tr. 21 ("he reported paranoia and being 'down' for six days and not getting out of bed, followed by another week of insomnia"). The ALJ also discussed in detail Plaintiff's administrative hearing testimony (Tr. 16-17). While the ALJ did not catalog every single complaint or symptom description, that is not required.

The ALJ adequately explained why he found Plaintiff's statements about the intensity, persistence and limiting effects of his symptoms not entirely consistent with the medical evidence and other evidence in the record. In addition to the normal findings on mental status examinations addressed above, the ALJ discussed Plaintiff's course of treatment, including a July 2021 report that his medications were "reasonably helpful" (Tr. 19). The ALJ emphasized treatment "has been on an outpatient basis with at first only conservative medication management and then psychotherapy was added, and "no hospitalizations or inpatient visits" (Tr. 17). The ALJ also cited Plaintiff's activities of daily living, in particular attending online college classes (Tr. 17); and the fact that Plaintiff "was looking for work" and applied for unemployment benefits, "which assumes that he believes he can work" (Tr. 17, 26). The ALJ also noted Plaintiff's failure to

16

cooperate in a consultative evaluation (Tr. 23), and inconsistencies between his reports to the VA versus his SSA administrative hearing testimony regarding the level of assistance he requires from his wife (Tr. 19).

These are all proper considerations when an ALJ is determining whether to credit a claimant's subjective complaints about their conditions. *See* 20 C.F.R. § 404.1529(c) (factors to be considered include, "objective medical evidence," the treatment a claimant has received, activities of daily living, "other measures" a claimant uses to relieve pain, and "other factors"); *see also Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (finding the ALJ properly considered the plaintiff's ability to spend time with family and others, drive or walk to the local coffee shop, and assist with chores around the house when determining the credibility of the plaintiff's subjective complaints); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." (citation omitted)).  Moreover, the ALJ provided "specific reasons for the weight given" to Plaintiff's subjective complaints, and the reasons are supported by substantial evidence.  *See* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017).  As such, the Court finds the ALJ properly evaluated Plaintiff's subjective complaints and alleged symptoms in a manner consisted with relevant SSA policies and regulations, including SSR 16-3p and 20 C.F.R. § 404.1529.

Plaintiff also complains there are "objective findings" in the record the ALJ overlooked or at least failed to address in the written decision.  Plaintiff cites records from June 22, August 24, and November 2, 2021, in which Plaintiff's VA providers noted Plaintiff's mood was "dysthymic (depressed, sad), anxious, angry, euphoric, irritable"; a record from July 12, 2021, indicating

17

Plaintiff was "physically restless" and became "easily upset by multiple topics"; an August 25 record indicating Plaintiff experienced "peaks and valleys" in his mood; and a September 8, 2021, record indicating Plaintiff was "focused on recent situation" and Plaintiff's mood was identified as: "'had a scary week'" [Doc. 19 at Page ID # 1524].

The ALJ addressed several of these "objective findings" explicitly in the written decision, in particular the observations from the July 12 record Plaintiff cites (Tr. 19). The ALJ noted Plaintiff was "physically restless at the beginning of the session, which was somewhat reduced by the end"; and his "affect was somewhat labile, easily upset by multiple topics, but able to calm himself and return to baseline, which was mildly anxious but positive." (Tr. 19). The ALJ also acknowledged Plaintiff "had a scary week" in September 2021, but in October he "enjoyed a trip with his son although he had to push past his 'comfort zone,'" (Tr. 21), and by December he "completed the bipolar group and realized benefit." (Tr. 22). More importantly, the ALJ is "not required to discuss all the evidence, as long as her factual findings as a whole show that she implicitly considered the record as a whole." *Rudd*, 531 F. App'x at 730; *see also Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006)) (explaining that ALJs are not required to discuss each piece of data in their decisions, "so long as they consider the evidence as a whole and reach a reasoned conclusion"); *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) (noting that an ALJ's failure to discuss certain records "does not indicate they were not considered").

In addition, as the Commissioner points out, the ALJ assessed a mental RFC consistent with that of the State Agency psychological consultants, except the ALJ assessed an additional limitation for only occasional interaction with supervisors and coworkers (Tr. 15, Tr. 76-68, Tr.

18

90-91). The reconsideration determination was made on May 27, 2022 (Tr. 91) and appears to reflect a review of VA records spanning through a mental status examination conducted as late as March 15, 2022 (Tr. 84). Plaintiff does not challenge the ALJ's reliance on the consultants' opinions, and he has therefore waived any argument in that regard.

Finally, Plaintiff argues the frequency of his "treatment sessions" would preclude his ability to work [Doc. 14 at Page ID # 1509]. The Commissioner contends "Plaintiff has the burden to show that his medical appointments will necessarily interfere with work, a burden he has not carried in this case." [Doc. 19 at Page ID # 1522]. The Commissioner points out, with citation to authority, that "multiple courts" in the Sixth Circuit have found the claimant bears the burden of proof in this respect [*id.* (citing *Noe v. Kijakazi*, No. 5:22-CV-00144-EBA, 2023 WL 2382729, at *4 (E.D. Ky. Mar. 6, 2023) (citing cases)]. Plaintiff does not challenge this aspect of the Commissioner's argument in his reply brief, either to refute the reasoning of the cases cited or the factual contention that Plaintiff has not adequately shown that his medical treatment will necessarily interfere with a reasonable work schedule or compel a finding of greater limitations than those assessed by the ALJ. Incidentally, the Court notes at least some of Plaintiff's appointments were conducted remotely (*see, e.g.*, Tr. 1417; Tr. 1385).

Considering Plaintiff did not reply to the Commissioner's well-reasoned argument, which is supported by citations to persuasive (though admittedly not binding) authority, the Court finds Plaintiff's argument regarding the frequency of his medical appointments not well-taken. Plaintiff's request for relief will be denied in this regard.

In sum, the record reflects the ALJ did not mischaracterize the evidence, ignore significant treatment or events in Plaintiff's medical history, or otherwise "cherry-pick[] select portions of the record." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723-24 (6th Cir. 2014) (finding error where

19

the ALJ failed to address "portions of the record, including the evidence of a continuing illness that was not resolved despite use of increasingly serious and dangerous medications"). Because the ALJ had "the enormous task of making sense of the record, reconciling conflicting medical opinions and evidence, and weighing the credibility of [Plaintiff's] subjective complaints," *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001), this Court's review is limited to whether the ALJ relied on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Comm'r of Soc. Sec.*, No. 21-1384, 2022 WL 740692, at *2 (6th Cir. Jan. 4, 2022) (quoting *Biestek*, 139 S. Ct. at 1154). In assessing Plaintiff's RFC, the ALJ explained the evidence that supported his findings and conclusions and why he considered certain evidence less persuasive, and the Court finds the ALJ's findings and conclusions are adequately supported and articulated. *See Schmiedebusch*, 536 F. App'x at 646 ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . ." (citation omitted)).

The decision reflects a "logical bridge between the evidence and the conclusion that the claimant is not disabled." *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010)). Plaintiff cites to evidence in the record to support his position, but that is insufficient given the standard of review. *See Schmiedebusch*, 536 F. App'x at 646 ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a zone of choice within which the Commissioner can act, without the fear of court interference." (quoting *McClanahan*, 474 F.3d at 833)).

## V.    CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1) Plaintiff's request for relief [Doc. 13 & Doc. 14] is **DENIED**;

(2) the Commissioner's request that her final decision denying benefits be affirmed [Doc. 18] is **GRANTED**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
_____
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

21